Bessie May SPINKS, Appellant,

v.

STATE of Indiana, Appellee.

No. 881S220.

Supreme Court of Indiana.

July 23, 1982.

William T. Lawrence, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Bessie Spinks was convicted of voluntary manslaughter, Ind.Code § 35–42–1–3 (Burns 1979), in a court trial by the Marion County Superior Court, Criminal Division II, on December 16, 1980. She was thereafter sentenced to fifteen years imprisonment. Appellant now directly appeals and raises the following four issues:

(1) Whether there is sufficient evidence to sustain Appellant's conviction.

(2) Whether the trial court's verdict is contrary to law.

(3) Whether the trial court erred in not granting Appellant's *pro se* request to have the court dismiss her personally retained counsel and appoint a public defender for her.

(4) Whether the trial court erred in sentencing Appellant to fifteen years without enumerating reasons for aggravating Appellant's sentence beyond the criminal code's presumptive ten year term.

I

Appellant first asserts that there was insufficient evidence to support her conviction for voluntary manslaughter. Specifically, Spinks argues that the State failed to present sufficient evidence to negate her claim of self-defense.

Our standard of review for sufficiency questions is the same in all cases. This Court will consider only the evidence most favorable to the State with all logical inferences drawn therefrom. *Harris v. State*, (1981) Ind., 425 N.E.2d 112. We will reverse a verdict not supported by sufficient evidence to preserve the constitutional right to due process. A verdict will not be disturbed, however, when there is substantial probative evidence from which the trier of fact could reasonably infer guilt beyond a reasonable doubt. *Harris v. State, supra; Williams v. State*, (1978) 269 Ind. 265, 379 N.E.2d 981. In reviewing a lower court's findings, we will not reweigh the evidence. *Hooks v. State*, (1980) Ind., 409 N.E.2d 618.

When a self-defense claim is raised casting some reasonable doubt as to guilt, the State has the burden of proving beyond a reasonable doubt that the defendant did not meet at least one of the ele-

ments necessary to prove that justification. *Cox v. State*, (1981) Ind., 419 N.E.2d 737; *Loyd v. State*, (1980) Ind., 398 N.E.2d 1260. Self-defense is proved by showing that the defendant acted without fault, was in a place where he had a legal right to be, and was in real danger of death or great bodily harm or was in such apparent danger as caused him in good faith to fear death or bodily injury. *Cox v. State, supra; Berry v. State*, (1978) 268 Ind. 432, 376 N.E.2d 808. In Indiana, using deadly force for self-defense is justified only when a person reasonably believes such force is necessary to prevent death or serious bodily injury. Ind. Code § 35-41-3-2(a) (Burns Supp. 1982). Even if a person is assaulted, the trier of fact can rightfully find that a reasonable person in the same circumstance would not have been placed in reasonable fear of death or great bodily harm and therefore would not have been justified in the use of deadly force in self-defense. *Loyd v. State, supra.* The final determination of whether the State has met its burden to negate Appellant's claim rests with the trier of fact. A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that the self-defense issue had been proved beyond a reasonable doubt.

In the present case, the probative evidence most favorable to the State was substantial. Decedent's blood alcohol count was high enough for the court to reasonably conclude that the victim was extremely intoxicated and somewhat incapacitated (327 milligrams ethanol per deciliter blood). The several police witnesses all testified that Spinks did not exhibit any of the familiar signs of intoxication when she was arrested soon after the killing, but rather talked rationally and asserted her rights. By Spinks' own account, she was able to stand up and break the victim's grasp on her neck when the victim allegedly attacked. Spinks was slightly taller and approximately one hundred pounds heavier than the victim. Despite the purported attack and ensuing struggle, Spinks was neat and presentable to the police when they arrived. When arrested, Spinks did not complain about any injuries she sustained due to fighting. The arresting police officers also testified that they did not notice any wounds or unusual marks on Spinks, although they had specifically looked for such marks since they had been informed about the alleged fight. A comparison of the superficial scratches in Spinks' "mug shot" with the gross abrasions and multiple bruises predominant in decedent's post-mortem photographs permits the reasonable conclusion that any alleged fight was very one-sided in Appellant's favor. In addition, the attending pathologist testified that strangulation was probably by use of a ligature applied to the victim's neck from behind. He based this opinion on the character of the markings on the victim's neck and on the lack of damage to the victim's fingers and hands. A twisted and stretched girl's nightgown found on the bed beside the victim's dead body may reasonably have been found to be the ligature used in this homicide.

The finder of fact properly decided that the above recited evidence was contradictory to and more persuasive than Appellant's story. All of this evidence supports the trial court's conclusion that a reasonable person in Spinks' situation would not in good faith have been caused to fear death or bodily injury. Further, the evidence is sufficient to support findings that Spinks was in no real danger of death or great bodily injury and that Spinks did not act without fault. Spinks' claim of self-defense was properly rejected upon the court's finding that Spinks failed to prove at least one of the requisite elements of self-defense. Appellant's request for review on sufficiency grounds therefore amounts to no more than an invitation to reweigh the evidence. This we will not do.

II

Appellant's second issue is whether the trial court's verdict is contrary to law. In Indiana, a verdict will be disturbed as being contrary to law only when there is an absence of substantial evidence on an essential element of an alleged crime. *Beatty v.*

*State*, (1963) 244 Ind. 598, 194 N.E.2d 727. Under Ind.Code § 35–42–1–3 (Burns 1979), the essential elements for a voluntary manslaughter conviction are:

1. Intentionally or knowingly
2. Killing
3. Another human being.

"Intentionally" and "knowingly" are defined in Ind.Code § 35–41–2–2 (Burns 1979):

"(a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so."

■ In the present case, Appellant argues that the verdict was contrary to law because there was a lack of evidence as to the requisite element of "knowingly or intentionally." Specifically, Spinks asserts she acted in self-defense. We have already held that there is sufficient evidence in this case to justify the trial court's rejection of Appellant's self-defense argument. Spinks alternatively contends that she was too intoxicated at the time of the killing to form the requisite intent for voluntary manslaughter. Voluntary intoxication is no defense to a crime unless the defendant is shown to have been so intoxicated as to have been incapable of forming the crime's requisite intent. *Cowans v. State*, (1980) Ind., 412 N.E.2d 54.

■ There is sufficient evidence in this case to reasonably support the trial court's holding that Spinks was not so intoxicated as to have been incapable of acting "knowingly or intentionally." Appellant was orderly in appearance and conduct immediately following the killing. The arresting police officers testified that Spinks did not overtly manifest being intoxicated at the time of her arrest but rather appeared sober and acted rationally. Spinks' own clear account of most of the events surrounding the killing and her admitted presence of mind to search for the victim's pulse and to

call and arrange for someone to attend to her daughter before having the homicide reported to the police further belie her intoxication defense.

We hold that there was sufficient evidence to lead the trier of fact to the judgment that Appellant was not so intoxicated as to have been incapable of "knowingly or intentionally" killing the victim. This verdict will not be set aside as contrary to law.

### III

Appellant's next alleged error asserts that the trial court erred in ignoring Appellant's *pro se* request for removal of her private counsel and for appointment of a public defender to represent her.

■ A defendant charged with a crime is guaranteed the right to be represented by counsel by Article I, § 13 of the Indiana Constitution and by the Sixth and Fourteenth Amendments to the United States Constitution. A failure to permit any defendant to have counsel represents a deprivation of that defendant's constitutional right to due process. This guarantee of the right to be represented includes the right for an indigent defendant in a criminal trial to have counsel provided at State expense. It is a judicial function, however, to determine whether counsel should be appointed at public cost, and this determination is within the discretion of the trial judge. *Moore v. State*, (1980) Ind., 401 N.E.2d 676; *Pallett v. State*, (1978) 269 Ind. 396, 381 N.E.2d 452; *Fulks v. State*, (1970) 255 Ind. 81, 262 N.E.2d 651.

■ Spinks initially retained private counsel for her defense in this matter. On October 21, 1980, the date the matter was set for a guilty plea, the trial court judge received from Spinks a handwritten three-page letter dated October 19, 1980. In said letter, Spinks asked the court to "dismiss" her attorney and to appoint for her a public defender. She expressed dissatisfaction with her private attorney's conduct of her defense, and stated that she had no more money to retain another private attorney at that time. Spinks further recited that she

owned her own home. Spinks' pre-sentencing report noted that her house and other assets were valued at $26,000, with no significant outstanding obligations. Also on October 21, 1980, in person and with her retained private counsel, Spinks executed and had filed a written waiver of her right to trial by jury. There is nothing in the record indicating that Spinks ever discussed her request for appointed counsel with her retained counsel. The record shows that Spinks never discharged her private counsel and never again raised the issue of her representation until the filing of her Motion To Correct Errors. Nowhere else in the record has Spinks suggested that her retained counsel was inadequate in his representation of her. Even now on appeal, there is no allegation that Spinks was not effectively represented by counsel at all times important in this case. Instead, Spinks argues that she was denied her fundamental right to counsel because the trial court, when requested, neither conducted a hearing nor made any determination on the record of whether she was able to afford counsel. Further, Spinks argues that although she has been represented by private counsel throughout her case, she has been clearly prejudiced by the substantial hardship imposed on her family by the expense of having to employ a private attorney.

Spinks relies almost exclusively on *Moore, supra.* In that case we reversed a conviction because the record did not show an adequate determination of the factual question of defendant's ability to afford counsel prior to trial. The case before us is different from *Moore.* Defense counsel in *Moore* successfully moved to withdraw himself, leaving the defendant without any representation. In *Moore* we held:

> "The court's duty to appoint competent counsel *arises* at any state of the proceedings when the defendant's indigency causes him to be *without the assistance of counsel.*" *Moore v. State,* Ind., 401 N.E.2d at 679 (emphasis added).

Since there was no moment when Spinks was without the effective assistance of counsel, the trial court had no reason to conduct an evidentiary hearing and had no duty to appoint a public defender.

We therefore hold that because this case imposed no duty on the trial court to exercise its judicial discretion, the trial court was correct in ignoring Spinks' *pro se* request in this matter. In addition, we note that if the trial court had been required to act, Spinks would have waived her right to contest on this issue anyway. She had the power to directly request her counsel to withdraw. Since she never did so request, she waived whatever right she had to replace her attorney. *Lindley v. State,* (1981) Ind., 426 N.E.2d 398.

## IV

Appellant's final issue is that the trial court erred in sentencing the Appellant to a determinate fifteen year prison term without recording any statement of the court's reasons for aggravating Appellant's sentence beyond the criminal code's presumptive ten year term. Appellant also argues that her sentence should have been mitigated according to Ind.Code § 35–4.1–4–7 [§ 35–50–1A–7 (Burns 1979)].

Appellant was convicted of voluntary manslaughter, a class B felony, Ind.Code § 35–42–1–3(a) (Burns 1979) which, under normal circumstances, warrants sentencing to a fixed term of ten years, Ind.Code § 35–50–2–5 (Burns 1979). The record of the Superior Court proceeding in this case did not contain a written and complete record supporting the court's imposition of a fifteen year sentence. In deference to our holding in *Page v. State,* (1981) Ind., 424 N.E.2d 1021, the State conceded the correctness of Appellant's challenge on this issue.

■ We reaffirm our holdings in *Page.* A trial court has judicial discretion to aggravate or mitigate a sentence from the statutory prescription. Ind.Code § 35–4.1–4–7(b), (c) and (d) [§ 35–50–1A–7(b), (c) and (d) (Burns 1979)]. When a trial court exercises this judicial discretion it must make a statement of its reasons. This necessarily requires a rendition of facts, taken in some detail from the record, which are peculiar to the particular defendant and crime. Mere-

ly suggesting that a sentence is appropriate by comments of general impression or conclusion will not suffice. The trial court's statement must be sufficient to enable us to make a decision on the reasonableness of the sentence. Only in this way can we fulfill our responsibility to review the trial court's exercise of its judicial discretion. The trial court's statement is important also because it further serves to enlighten the defendant and the community as to the trial court's reasons for the imposition of an enhanced sentence, thereby greatly bolstering the public's confidence in the fairness and justice of our State's judicial process.

█ Finding no statement of explanation or justification to support the enhanced sentence imposed in this case, we remanded to the trial court. Doing so, we ordered the trial court to make written findings and a statement of its reasons for pronouncing the enhanced sentence. We further instructed the court to specifically enumerate all pertinent aggravating and mitigating circumstances as specified in Ind.Code § 35–4.1–4–7 [§ 35–50–1A–7 (Burns 1979) ]. On March 26, 1982, the trial court responded to our order and filed the following *nunc pro tunc* entry in the record:

"The court had found that there were aggravating circumstances existing in this case as to the sentence imposed.

The fact that the victim's body was bruised, scratche[d] and her throat tied up by the use of the Defendant's daughter's pyjamas, the savage beating that must have occurred because of the scars on the body, and the testimony that you had been away from your daughter, who is a cripple, for better than a month, and upon returning home immediately left.

This is evidence of no remorse upon your part as to your participation in this crime. This court believes that these are aggravating circumstances."

By disclosing these reasons, the trial court complied with our mandate set forth in *Page* and provided us with the record necessary for purposes of our review.

While this entry in the record is adequate for our review in this particular case, it is only nominally so. The statement of the trial court in justification of its enhancement of a sentence should be complete in itself. This Court should not be required to engage in any interpretation of the statement. The statement should be facially clear and should specifically enumerate each of the statutory factors of mitigation and aggravation relied on in justifying the enhanced sentence. Further, the statement must be factually correct and consistent with the rest of the record.

█ Our scope of review pertaining to sentencing is established and defined in Rule 2 of the Indiana Rules for the Appellate Review of Sentences. Rule 2(1) directs that we "will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Rule 2(2) states that "a sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed." The record reflects that Spinks strangled the victim in a most brutal and vicious way. Her claims of self-defense and intoxication have been rightly rejected. This Court therefore finds that this sentence is not manifestly unreasonable in light of the nature of the offense and the character of the offender.

The judgment of the trial court is affirmed in all respects.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

HUNTER, J., concurs in result only.