**Wendell Lamar SIMMONS, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

**No. 984S359.**

Supreme Court of Indiana.

March 2, 1987.

Thomas G. Godfrey, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Wendell Lamar Simmons was convicted at the conclusion of a jury trial in the Madison Superior Court of rape, a class A felony; robbery, a class B felony; and theft, a class D felony. He was sentenced to fifty (50) years for rape, fifteen (15) years each for robbery and criminal confinement, and two (2) years for theft, all to be served consecutively, for a total sentence of eighty-two (82) years. On direct appeal, he raises the following issues:

1. permitting expert testimony regarding the victim's clothing, and limiting presentation of evidence regarding the chain of custody of the clothing;

2. permitting evidence of rape trauma syndrome;

3. denial of Appellant's motion *in limine* and motion to sever;

4. denial of Appellant's motion to dismiss and discharge, and motion to amend the information;

5. denial of Appellant's motion for change of venue from the county and judge;

6. permitting evidence of the victim's changed behavior after the rape;

7. admitting State's Exhibit No. 27 into evidence; and

8. sentencing.

On the night of October 14, 1983, J.Y. and her friend went to the Anderson High School football game. After the game they went to a restaurant, where they encountered the friend's cross-country coach. The coach challenged the friend about not keeping with training. J.Y. then took her friend home, and returned to Anderson High School. She had noticed the coach's car, and sought to confront him over what she considered his rude conduct at the restaurant. Outside the school, Appellant approached J.Y., held a knife against her, threatened her, and forced her to walk to a railroad right-of-way and undress. Appellant put his jacket on the ground, ordered J.Y. to lie on it, and raped her while holding a knife. After raping J.Y., Appellant repeatedly told her he would have to kill her.

Appellant announced he had a gun, and walked J.Y. back to her car. He drove the car to a gas station and ordered J.Y. to buy gasoline and draw cash on her credit card. Appellant dropped J.Y. off about a half mile from her house, fabricated a story which he told her to relate, and took her car. J.Y. ran home and told her father she had been raped and the car had been stolen. He persuaded her to report it to the police, and J.Y. then related the fabricated story to the police. Subsequently, she did give a statement relating the events as written above. The car was recovered in Georgia the day after the rape, with Appellant at the wheel. Appellant testified at trial that he met J.Y. in front of the high school on his way to his girlfriend's house, smoked marijuana with her, and had consensual intercourse with her in her car, after which she voluntarily gave him the car so that he could drive to Georgia to see his children.

I

Appellant maintains the trial court erred in permitting Steven First to testify and in not allowing Appellant to present evidence on the chain of custody of J.Y.'s clothes.

Appellant's initial trial resulted in a hung jury. After the first trial, First examined J.Y.'s socks, pants, and panty hose, and determined the presence of grass deeply imbedded in the fabric. Hospital personnel had given these articles of clothing to the police on the night of the rape, and the police had placed them in a sack which was identified at trial. The clothing was stored in the Anderson Police Department lock-up until it was taken to the Indiana State Police laboratory, where it remained until the first trial. During the trial and jury deliberations, the jurors and court personnel handled the clothing. At the second trial, a hearing was conducted outside the presence of the jury to determine the admissibility of the clothing. Some jurors from the first trial testified to having seen grass on the clothing, while others testified they had seen none. The trial court found a sufficient chain of custody had been presented to negate the possibility of tam-

pering or alteration. The trial court upheld the State's motion *in limine* regarding evidence of the initial trial, and did not allow Appellant to call the jurors from the first trial as witnesses.

To establish a chain of custody, the State need only present evidence that strongly suggests the exact whereabouts of the evidence at all times. The State need not provide evidence that excludes all possibility of mishap or tampering, but need provide only reasonable assurance that the evidence passed through various hands in an undisturbed condition. *Salahuddin v. State* (1986), Ind., 492 N.E.2d 292, 293.

The evidence at trial traced the clothing from the hospital to the Anderson Police lock-up, to the State Police laboratory, to Steven First. With the chain of custody thus provided for, the trial court properly allowed Steven First's testimony.

Appellant also argues he should have been allowed to call the original jurors to testify regarding their handling of the clothing, so as to complete the chain of custody. Although he raises the possibility that the condition of the grass on the clothes was somehow altered when the original jurors handled them, this is no more than mere speculation. The expert's testimony was that the grass was deeply embedded in the fabric, and required a brush and tweezers for extraction. The possibility that the jurors' handling of the exhibits so deeply embedded the grass therein is extremely remote. The trial court was faced with balancing opposing interests: 1) that the jury be advised of each person who handled the clothing; and 2) that the jury not be advised of the prior trial resulting in a hung jury. The latter could be achieved while still advising the jury that the clothing was handled by hospital staff, and police and court personnel. This handling, in all likelihood, caused just as much settling of the grass as any handling by the jury. Furthermore, the incriminating evidence, that is, the evidence which refuted Appellant's version of the facts, was not that there was grass on one piece of clothing as opposed to another, but that there was any grass at all present on the clothing. The chain of custody was sufficiently established, and Steven First was properly allowed to testify. The trial court did not err in refusing to allow the original jurors to be called as witnesses.

II

Appellant contends the trial court erred in allowing State's Witnesses Linda Kepner and Brenda Turnbloom to testify regarding rape trauma syndrome. J.Y. reported being raped to the police, but failed to tell them she had been to the Payless Supermarket on the west side of Anderson with Appellant. Instead, she initially reported having been abducted from another Payless Supermarket on the south side of Anderson, and taken to the Grandview Golf Course and raped. When he was arrested, Appellant told the police he had engaged in consensual intercourse with J.Y., after which they drove to the west-side Payless to cash a check. Subsequent investigation supported the fact that J.Y. and Appellant were at the west-side Payless. J.Y. testified at trial that she did not remember being at the west-side Payless. About one month after the rape, J.Y. gave a statement to the police in which she changed her original report. She maintained she was abducted from the Anderson High School area and was taken to some nearby railroad tracks and raped. She explained her second version by stating Appellant, after threatening to kill her, had ordered her to recount the initial version.

Linda Kepner testified as a certified social worker, specializing in studies concerning sexual assaults. She founded Women's Alternatives Inc., an organization to aid rape and sexual assault victims. Brenda Turnbloom testified to credentials in counseling and psychology, and to two (2) years training at the Indiana University School of Social Work, specializing for three (3) years in cases of rape, domestic violence, and child sexual abuse. She is a past president of Women's Alternatives Inc. Kepner testified that J.Y.'s failure to remember being at the Payless Supermarket was not unusual for a rape victim and was consistent

with rape trauma syndrome. Turnbloom testified concerning three types of rapists, stating that, based on the events described in J.Y.'s statements to the police, the individual who raped J.Y. was a "power rapist." This testimony was used to show that J.Y. could have felt under the threat and power of Appellant even after the night of the rape, thus explaining her original statement to the police.

Appellant maintains Kepner and Turnbloom vouched for J.Y.'s credibility, and that their testimony prejudiced Appellant.

Appellant's version of the incident, to which he testified, was that he did, in fact, meet J.Y. at the Anderson High School, that they smoked marijuana together, and that she voluntarily went with him and consented to sexual intercourse. J.Y. testified that Appellant told her several times he would have to kill her since her father was a lawyer and he knew she could identify him. He finally agreed not to kill her if she would get him some money with her credit card, let him take her automobile, and tell a different version of the incident that he furnished to her. She did at first tell this false version of the events although she continued to insist that she was raped and forced to do all the things she did that night.

■ It is proper for an expert witness to give an opinion in order to aid the jury or trier of fact. *Blackmon v. State* (1983), Ind., 455 N.E.2d 586, 591; *Washington v. State* (1979), 271 Ind. 97, 102, 390 N.E.2d 983, 987. The witnesses here were properly qualified psychiatric social workers, specifically trained in treatment of rape victims. Their testimony tended to show the victim's behavior after the rape was consistent with the clinically observed behavior pattern known among professionals as "rape trauma syndrome." The witnesses did not give an opinion as to the credibility of the victim. They described the victim's behavior as consistent with the behavior pattern often seen, much as the police officer in *Blackmon* testified as to the behavior of burglars under certain circumstances. *Blackmon,* Ind., 455 N.E.2d at 591. The decision to allow the opinion of an expert is left to the discretion of the trial judge and will be reviewed by this Court only if the trial court exceeds his discretion. *Shelby v. State* (1981), Ind., 428 N.E.2d 1241, 1243; *Woods v. State* (1978), 267 Ind. 581, 582, 372 N.E.2d 178, 178. In view of the facts and circumstances here, we cannot say the trial court committed reversible error in allowing the testimony of these two state witnesses.

### III

Appellant alleges the trial court erred in denying his motions *in limine* and to sever Count IV of the charging information (theft).

■ Appellant was charged by way of a four-count information with rape, robbery, criminal confinement, and theft. The charges were joined because they were all part of a series of connected acts. Ind. Code § 35–34–1–9(a)(2) (Burns 1985). The theft of J.Y.'s car came at the end of a night during which Appellant held J.Y. at knifepoint, drove her around the city, and raped her. All charges were properly joined. Whether to sever the charges was within the discretion of the trial court. Ind.Code § 35–34–1–11(a) (Burns 1985). While Appellant argues the facts of this case were too complex for a single trial, and that the jury would naturally convict him of theft if they determined that he raped J.Y., this argument is speculative and without merit. Appellant has failed to show the trial court abused its discretion in proceeding to trial on all four charges.

■ Appellant also alleges error in the trial court's admission of evidence regarding his arrest in Alabama for a traffic violation, but gives no argument in support other than the evidence was incriminating, prejudicial, or immaterial. In order for this Court to review alleged errors, a defendant must make specific arguments in his allegation. *See Burton v. State* (1986), Ind., 497 N.E.2d 535, 538. Arguments that evidence should not have been admitted because it was "incriminating" or "immaterial" give this Court nothing to review. Furthermore, as we already have stated, the

theft of the car and Appellant's subsequent arrest in Alabama was part of an entire series of events which comprised this cause of action. Any evidence pertaining to the theft and flight therefore was admissible.

### IV

Appellant maintains the trial court erred in not granting his motion to dismiss and discharge on Counts II, III, and IV, and to amend Count I. He argues the charges were not a plain, concise, and definite written statements of the facts constituting the offense.

The purpose of an information is to advise the defendant of the particular crime charged so that he can prepare a defense. Absence of detail in an information is fatal only if the phraseology fails to state a charge, misleads the defendant or fails to give him notice of the charges against him. *McGee v. State* (1986), Ind., 495 N.E.2d 537, 538. Minor variances from the wording of a statute do not make an information defective. *Smith v. State* (1984), Ind., 465 N.E.2d 702, 704, *reh. denied* (1984).

■ The robbery charge alleged Appellant took fifty dollars ($50.00) "from [J.Y. L.]." Appellant argues the charge was defective because it failed to state the property was taken "from the presence of" or "from the person of." The charge sufficiently conveyed the allegation the money was taken from the person of J.Y.L.

■ Appellant further argues the confinement charge was defective because it failed to state the manner of the confinement. Ind.Code § 35–42–3–3 defines criminal confinement:

"(a) A person who knowingly or intentionally: (1) confines another person without his consent; or (2) Removes another person by hand, enticement, force, or threat of force, from one (1) place to another; commits criminal confinement, a class D felony. However, the offense is a ... class B felony if it is committed while armed with a deadly weapon...."

How, when, and where the confinement took place, that is, the manner of the confinement, are not elements of the offense.

The charge did allege Appellant knowingly confined J.Y. without her consent, while armed with a knife and handgun. This wording sufficiently addressed all of the elements of the statute to give Appellant notice of the charges against him.

■ Appellant also contends the theft charge was defective because it failed to allege the automobile was taken without the consent of J.Y. or anyone else. The charge alleged Appellant exerted "unauthorized" control over the automobile. The use of the word "unauthorized" means the control was without consent of the owner.

■ Finally, Appellant argues the rape charge should have been amended to be more definite and certain. He maintains the use of both "threat of force" and "use of force" to describe the rape was "duplicious [sic] and misleading," and failed to explain with which he was being charged. The evidence showed Appellant both used, and threatened the use of, force. There is no requirement that the State choose which phrase to allege.

All four charges were stated in the words of the statute or words that convey a similar meaning, and sufficiently apprised Appellant of the nature of the charges against him so that he could anticipate the proof and prepare a defense in advance of trial. *Smith*, Ind., 465 N.E.2d at 704.

### V

Appellant alleges the trial court erred in denying Appellant's motion for a change of venue from the county and the judge.

■ Appellant sought a change of venue from the county due to excessive publicity after his first trial resulted in a hung jury. He sought a change of venue from the judge when he learned that J.Y.'s family allegedly had been seen in the judge's chambers during the original trial.

In order to obtain a change of venue from the county, it is incumbent upon a defendant to produce evidence of community bias or prejudice sufficient to convince the trial court that he could not obtain a fair trial in that county. It is not the

amount of pretrial publicity that is important, but rather, a consideration of that which contains inflammatory materials or misstatements or distortions of the evidence which could not be admissible at the trial. *Slone v. State* (1986), Ind., 496 N.E.2d 401, 404. The question is not whether potential jurors had heard of the crime or Appellant's identification with it, but whether those potential jurors had a preconceived notion of Appellant's guilt and whether they were able to set aside that notion and render a verdict based upon the evidence. In reviewing a trial court's denial of the motion for change of venue on these grounds, we will affirm unless there is a showing that jurors were unable to deliberate fairly. *Id.*

Here, Appellant has failed to make such a showing. Instead, he has merely alleged the existence of prejudicial articles, without showing the articles affected the jury's ability to remain impartial, or even that the jurors were exposed to the articles.

■ Appellant also moved for a change of venue from the judge. He alleged the judge was biased because J.Y.'s family was seen in the judge's chambers during the initial trial. On the record, the trial judge explained he could be considered a friend of J.Y.'s father based on the fact they were both members of the bar. He explained he was not a close, personal friend. He further explained that J.Y. and a friend had been talking near the court's outer office while waiting to testify during the initial trial, which had disturbed the employees. He had suggested they wait in his chambers, but he was never present when they were in his chambers. After a couple of days, the judge ordered that this practice be stopped.

The trial court did not abuse its discretion by denying the motion for change of judge. Appellant has shown no relationship involving the trial judge that would mandate him to grant a change of judge. The trial judge is a part of the legal community, the same as any other judge or attorney. Under the present facts, we do not find that the trial court abused its discretion. *See Bixler v. State* (1984), Ind., 471 N.E.2d 1093, 1101, *reh. denied* (1985).

## VI

■ Appellant contends the trial court erred in permitting J.Y.'s father and sister to testify concerning J.Y.'s behavior after the rape.

The testimony showed J.Y. became afraid to go outside by herself, stayed home more often, and even feared for other family members who went out alone.

The trial court is accorded wide latitude in ruling on the relevancy of evidence, to determine the probative value of evidence *vis a vis* its prejudicial impact. Even where the evidence is only marginally relevant, it is within the sound discretion of the trial court to determine its admissibility. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 460, *reh. denied* (1986).

The evidence at issue here, J.Y.'s behavior and fears after October 14, 1983, were relevant in that they were probative of the fact that she had been raped. This evidence logically tended to prove an issue of fact.

It was within the trial court's discretion to admit the testimony. *White v. State* (1981), Ind., 425 N.E.2d 95, 97; *Turpin v. State* (1980), 272 Ind. 629, 633, 400 N.E.2d 1119, 1122, *reh.* denied (1980); *Irons v. State* (1979), 272 Ind. 287, 292, 397 N.E.2d 603, 606.

## VII

■ Appellant argues the trial court erred in admitting into evidence State's Exhibit No. 27, a metal pipe.

J.Y. testified Appellant had a metal pipe with him on the night she was raped. During Appellant's trial, the State called Anderson Police Detective Mike Williams to testify that on that morning, March 24, 1984, he discovered State's Exhibit No. 27 at the crime scene, in almost the exact spot where the rape took place. J.Y. testified the pipe was similar to that which Appellant held during the rape. Appellant objected, stating it was preposterous that the

pipe would still be at the scene five (5) months after the rape.

In light of our standard set forth above for relevancy of evidence, this exhibit clearly was relevant. It fit the description of one of the weapons held by Appellant and used to threaten J.Y. Furthermore, it was found at the scene of the crime at a railroad right-of-way where not much traffic would be contemplated. Clearly this was probative evidence qualifying the exhibit for admission.

## VIII

Finally, Appellant contends the trial court erred by considering improper evidence in sentencing him, by finding aggravating circumstances, and by imposing consecutive sentences.

Appellant was convicted of class A rape, class B robbery and criminal confinement, and class D theft. The presumptive forty (40) year sentence for rape was aggravated to fifty (50) years, and the presumptive ten (10) year sentences for robbery and criminal confinement were aggravated to fifteen (15) years. All four sentences were ordered to be served consecutively for a total sentence of eighty-two (82) years. The trial court found no mitigating circumstances existed.

We will not revise a sentence authorized by statute unless such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed. *Freed v. State* (1985), Ind., 480 N.E.2d 929, 931. A trial court has judicial discretion to aggravate or mitigate a sentence from the statutory prescription. *Spinks v. State* (1982), Ind., 437 N.E.2d 963, 967. However, in imposing an increased or consecutive sentence, the record must show a consideration by the judge of the facts of the specific crime and the relation of the sentence to the objectives to be served by that sentence. *Smith v. State* (1986), Ind., 491 N.E.2d 193, 197. The court may use the same factor to aggravate a sentence and to order consecutive sentences. *Hedrick v. State* (1982), Ind., 430 N.E.2d 1150, 1157.

We find the statement of reasons by the trial court is sufficient to support the imposition of the sentence. *Spinks v. State* (1982), Ind., 437 N.E.2d 963, 967–968. It sufficiently refers to findings regarding the character of Appellant and the nature of the offense, and is amply supported by the evidence. The statement of reasons illustrates: 1) Appellant's history of criminal behavior, including petty larceny, unauthorized use of an automobile, grand larceny, and a pending burglary charge; 2) testimony of three women that Appellant had forced sexual activity with them; 3) the specific manner in which this crime was committed, that is, over a long period of time with various deadly weapons; 4) Appellant's fleeing the state after the commission of the present offenses; 5) Appellant's history and character, including his behavior throughout trial and his constant aggressive nature and attitude toward women, showing a contempt for the judicial system are evidence of a need of correctional or rehabilitative treatment; and 6) the victim's statement requesting the maximum sentence due to her own protracted trauma and suffering. The sentence imposed is within the bounds authorized by statute and is not manifestly unreasonable in light of the nature of the offense and character of the offender. We therefore find the trial court did not abuse its discretion in this area. *Bish v. State* (1981), Ind., 421 N.E.2d 608, 620, *reh. denied* (1981).

The trial court is affirmed.

GIVAN, C.J., and SHEPARD and DICKSON, JJ., concur.

DeBRULER, J., not participating.