**James COBBS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00–8701–CR–22.**

Supreme Court of Indiana.

Sept. 14, 1988.

Rehearing Denied Oct. 27, 1988.

Marce Gonzalez, Jr., Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of two counts of Murder, for which he received two thirty (30) year sentences to be served concurrently.

The facts are: On January 29, 1985, appellant met with Marion Coley, Rexie Buck, and James Oliver in Gary, Indiana to talk and drink whiskey. Later, Oliver and Buck agreed to give appellant a ride home. Appellant testified as follows: On the way, Oliver and Buck told appellant they had a "run to make" and stopped the car. Appellant decided he was close enough to his home to walk the rest of the way. On his way home, appellant stopped at Mr. Lucky's liquor store where he purchased a pint of whiskey, and also stopped at a filling station where he bought a package of cigarettes.

As appellant was proceeding home, Oliver and Buck pulled their car over to him

and insisted he accept another ride from them. Appellant got into the back seat of the two-door car, but he was not taken directly home. Oliver stopped the car in front of a Masonic hall and Buck turned around and told appellant to give him his billfold. Appellant told them he had no money, and Oliver said, "Hey, man, he means what he says." Appellant testified that he acted as if he were going to pull out his wallet but instead pulled out a .357 magnum pistol and shot Oliver in the forehead and Buck in the back of his head.

Other evidence showed the following: Both Oliver and Buck died of their wounds. Witnesses who were working behind the Masonic hall testified that they heard two shots and then saw appellant stumbling down a nearby alley with a gun in his hand. When police stopped appellant, he smelled of alcohol and had a gun in his pocket. Officer Petrusha testified that appellant told him he had just killed two men and stated, "I was in the car with them, they thought they were going to rob me, but they didn't know that I had my .357. Then I shot and killed them both...."

Appellant raises several issues in this appeal; we find, however, from the record that there is insufficient evidence to support appellant's conviction. Therefore, the other issues will not be addressed. Appellant testified that when Buck demanded his billfold and since he knew who they were, he feared they would kill him to keep from being identified. Therefore, he had but a few seconds to either shoot them or be killed himself.

The evidence shows there was not much light in the area and that appellant was in the back seat of a two-door car with Buck and Oliver occupying the front seat. It is clear that appellant was in a situation from which he could not retreat without displacing one of the two men in the front seat.

In *Spinks v. State* (1982), Ind., 437 N.E. 2d 963, 964–65, this Court stated:

"When a self-defense claim is raised casting some reasonable doubt as to guilt, the State has the burden of proving beyond a reasonable doubt that the defendant did not meet at least one of the elements necessary to prove that justification. (Citations omitted.)"

The Court went on to say:

"Self-defense is proved by showing that the defendant acted without fault, was in a place where he had a legal right to be, and was in real danger of death or great bodily harm or was in such apparent danger as caused him in good faith to fear death or bodily injury. (Citations omitted.)" *Id.* at 965.

There is no question in this case that appellant shot the victims. It is also true that in many instances this Court has repeated that the use of a deadly weapon in a manner calculated to cause injury may give rise to the presumption of malice. However, when self-defense is raised to explain the use of the deadly weapon, we must then look to the record to determine whether or not the State presented any rebuttal evidence to support the jury's finding of guilty.

This Court has stated many times that we will consider only the evidence most favorable to the State with all logical inferences drawn therefrom. *Id.* However, in so stating, we have also said:

"We will reverse a verdict not supported by sufficient evidence to preserve the constitutional right to due process." *Id.* at 964.

This principle of law has been reiterated often by this Court. We note in the case of *Osbon v. State* (1938), 213 Ind. 413, 13 N.E.2d 223, this Court reversed a murder conviction and in so doing stated:

"As heretofore stated, we have no power to weigh evidence and determine the proved facts when a su[b]stantial conflict is found to exist. In the instant case there is no conflict in the evidence as to the guilt of the appellant; there is a total lack of evidence to sustain the verdict and judgment...." *Id.* at 427–28, 13 N.E.2d at 229.

In *Baker v. State* (1956), 236 Ind. 55, 62, 138 N.E.2d 641, 645, this Court stated:

"When we carefully examine the cases decided in the long history of this court which have reversed convictions because

they were not sustained by sufficient evidence, it is apparent that the court was applying a test that some material allegation had not been proved by substantial evidence so that no reasonable man could say this issue had been proved beyond a reasonable doubt. (Citation omitted.)"

We have carefully examined the record in this case and find no evidence whatsoever to contradict appellant's claim of self-defense. Others who had been with appellant and the victims prior to the shooting testified that all were in good humor, and there had been no controversy between the parties. Following the shooting, appellant left the automobile and made no attempt to take any property from the victims. There is absolutely no evidence in this record of any robbery attempt by appellant. In fact, there is a total absence of any guilty motive which the State could impute to appellant.

Although appellant left the scene immediately following the shooting, there is no evidence from which the jury could logically infer that appellant was fleeing the scene. Witnesses who testified to having seen appellant shortly after he left the automobile stated that he walked slowly and staggered slightly as he walked, that he stopped briefly at a boys club, that he proceeded down the street, that he reloaded his gun, and that he climbed the steps to a church where he sat down for a few minutes before continuing on his way. When confronted by police officers, appellant immediately surrendered and immediately told the officers he was hunting for a place to call the police because he had just shot two men who had attempted to rob him. Appellant's story remained constant, and there is absolutely no evidence in the record to contradict it.

The State takes the position that appellant was walking in the opposite direction of telephones located in a nearby bus station. However, such a fact, if it be a fact, does not contradict appellant's statement that he was hunting for a telephone, nor does it in any way establish that appellant was attempting to escape the scene of the crime.

 Because of the lack of evidence in this case to contradict appellant's statement of self-defense, and because there is a total lack of evidence to support any theory of the shooting other than appellant's explanation, this Court is compelled to reverse this conviction. In view of the fact his conviction is being reversed because of insufficient evidence, the appellant must be discharged. *Bullington v. Missouri* (1981), 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270; *Webster v. Duckworth* (7th Cir.1985), 767 F.2d 1206, *cert. denied*, 475 U.S. 1032, 106 S.Ct. 1242, 89 L.Ed.2d 350.

The trial court is reversed and appellant is ordered discharged.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., dissents without separate opinion.