Charles. W. MOORE, Roy D. Stamper,
Dudley Gray and Marilyn J. Hunter,
Appellants (Defendants below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1179S303.

Supreme Court of Indiana.

March 18, 1980.

R. Davy Eaglesfield, III, Indianapolis, Harry L. Zerbe, Lawrenceburg, for appellants.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Asst. Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Charles W. Moore, was convicted by a jury of conspiracy to commit the felony of dealing in cocaine, a class B felony, Ind. Code § 35–41–5–2 (Burns 1979 Repl.); four counts of possession of a controlled substance, a class D felony, Ind. Code § 35–48–4–7 (Burns 1979 Repl.); and one count of possession of a controlled substance, a class C felony, Ind. Code § 35–48–4–6 (Burns 1979 Repl.). He was sentenced to eighteen years for the class B felony, two years for each of the class D felonies, and five years for the class C felony, all sentences to run concurrently. He now raises the issue of whether or not his convictions should be reversed because the trial court failed to appoint counsel for him after his repeated requests for court-appointed counsel. Due to our disposition of the case on this issue, we do not have to consider any further errors.

· The facts from the record relevant to this issue show that defendant was represented by counsel from the time of his arraignment in the Ripley Circuit Court in May, 1978, until September 13, 1978. At that time defendant's counsel filed a motion to withdraw from employment which was granted by the trial court. The court then held a hearing on September 25, 1978, to determine how defendant would be represented at his trial which was set for November 20, 1978.

The court began the hearing by notifying the defendant that the court had approved the withdrawal of defendant's private attorneys. Defendant stated that he knew his attorneys had to withdraw because he had no money to pay them at that time. He explained that he had raised money to pay a bond on a charge in a Marion County court and that he had paid his attorneys for representing him in a federal case in Indianapolis. The charges in the federal case as well as the charges filed in Marion County were dismissed. Defendant said he did not know what to do except have a court-appointed attorney since he had no more money to pay his private attorneys.

The court then asked defendant if he had a job or any assets. Defendant testified that his father owned a well drilling business and he and his brother both worked with their father in this business. He stated that he did not receive a regular paycheck but that he, his father and brother would periodically split whatever was earned from drilling wells. Defendant stated that he had just paid tuition for a course at a technical school to become a certified welder. Defendant and his wife owned a car and had been buying a house through FHA financing for six and one-half years. There was no inquiry as to the current value of the car, the amount of any indebtedness on the car, or the amount of any other liabilities defendant might have had.

The prosecutor objected to court-appointed counsel because "The man is employed and apparently a part owner in a business, an automobile and drilling equipment." The court denied defendant's request to have court-appointed counsel without any further inquiry as to defendant's actual income or the amount of equity defendant had in his home or the drilling equipment.

Defendant later requested another opportunity to talk to the court concerning his lack of counsel and a hearing was held on November 9, 1978. Defendant stated that

he had changed jobs and was now a salesman; that he had taken a one-month training course and had only received one paycheck; that he hadn't been able to pay his father back for the money he borrowed before to pay the attorneys the last time; and that he couldn't get a second mortgage on his home because the FHA did not give second mortgages. He again asked for a court-appointed attorney. The court stated that he would not appoint an attorney since defendant did own real estate and had some equity in that as well as in the equipment. However, there is no evidence in the record of the actual amount of equity defendant had and there is no evidence of any attempt to evaluate defendant's income or total assets and liabilities.

The trial began on April 27, 1979, without defendant being appointed legal counsel. Defendant did ask permission of the court for a minister, Reverend Phillip Willis, to assist him during the trial, and the court agreed to this. Reverend Willis began his voir dire examination of the jury by espousing a doctrine of born again Christian theology. He asked questions of each juror concerning their belief in born again Christianity and the Bible. He based all of his defense of defendant on the fact that defendant had a regenerating experience in Christ and was now a new man. Defendant points to innumerable instances during the trial of irregularities caused by the legal inexperience of Reverend Willis.

■ Defendant contends that the failure of the trial court to appoint him legal counsel has denied him his constitutional right to the assistance of counsel and has resulted in a denial of his right to a fair trial. There is no doubt that we are dealing here with one of the most fundamental of our constitutional guarantees. A defendant charged with a crime is guaranteed the right to be represented by counsel by Article 1, Section 13 of the Indiana Constitution and the Sixth and Fourteenth Amendments to the Constitution of the United States. *State v. Minton*, (1955) 234 Ind. 578, 130 N.E.2d 226; *Wilson v. State*, (1943) 222 Ind. 63, 51 N.E.2d 848. A failure to permit a defendant to have counsel amounts to a denial of due process, and there can be no valid criminal trial unless a defendant is represented by counsel if he desires counsel. *Fitzgerald v. State*, (1970) 254 Ind. 39, 257 N.E.2d 305; *State v. Minton, supra; DeFrisco v. State*, (1972) 153 Ind.App. 609, 288 N.E.2d 576.

■ The guarantee of the right to be represented by counsel includes the right for an indigent defendant in a criminal prosecution to have counsel provided for him at state expense. *Pallett v. State*, (1978) Ind., 381 N.E.2d 452; *Swinehart v. State*, (1978) Ind., 376 N.E.2d 486. It is a judicial function to determine whether counsel shall be appointed at public expense, *Fulks v. State*, (1970) 255 Ind. 81, 262 N.E.2d 651, and this determination is within the sound discretion of the trial judge. *Hendryx v. State*, (1892) 130 Ind. 265, 29 N.E. 1131. While it is not possible to set specific monetary guidelines which would determine a defendant's indigency, there are several factors which must be considered. Since we are dealing with such a fundamental constitutional right, the record in each case must show that careful consideration commensurate with the right at stake has been given to the defendant. Although we find no Indiana cases which discuss what specific factors must be considered, these factors have been discussed by courts in other jurisdictions. *See, Annot.,* 51 A.L.R.3d 1108 (1973).

■ First, it appears clear that the defendant does not have to be totally without means to be entitled to counsel. If he legitimately lacks the financial resources to employ an attorney, without imposing substantial hardship on himself or his family, the court must appoint counsel to defend him. *Anaya v. Baker*, (10th Cir. 1970) 427 F.2d 73; *United States v. Cohen*, (8th Cir. 1969) 419 F.2d 1124; *State ex rel. Partain v. Oakley*, (1976) W.Va., 227 S.E.2d 314; *In re Smiley*, (1967) 66 Cal.2d 606, 58 Cal.Rptr. 579, 427 P.2d 179. *See also, Hardy v. United States*, (1964) 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331; American Bar Association Project on Minimum Standards for Criminal Justice, Approved Draft (1968), *Stan-*

dards *Relating to Providing Defense Services* § 6.1.

■ The determination as to the defendant's indigency is not to be made on a superficial examination of income and ownership of property but must be based on as thorough an examination of the defendant's total financial picture as is practical. The record must show that the determination of ability to pay includes a balancing of assets against liabilities and a consideration of the amount of the defendant's disposable income or other resources reasonably available to him after the payment of his fixed or certain obligations. *People v. Castile,* (1979) 71 Ill.App.3d 728, 28 Ill.Dec. 259, 390 N.E.2d 426; *Minniefield v. State,* (1972) 47 Ala.App. 699, 260 So.2d 607; *Morgan v. Rhay,* (1970) 78 Wash.2d 116, 470 P.2d 180. The fact that the defendant was able to post a bond is not determinative of his nonindigency but is only a factor to be considered. *People v. Castile, supra; Perryman v. State,* (Tex.Crim.App.1975) 519 S.W.2d 438. The court's duty to appoint competent counsel arises at any stage of the proceedings when the defendant's indigency causes him to be without the assistance of counsel. *State ex rel. Grecco v. Allen Circuit Court,* (1958) 238 Ind. 571, 153 N.E.2d 914; *State ex rel. Shorter v. Allen Superior Court,* (1973) 155 Ind.App. 269, 292 N.E.2d 286.

■ In the instant case, it is clear that defendant asked to have counsel appointed and testified that he had no more money to pay his attorneys. The private attorneys who had represented defendant on other charges had withdrawn. The record shows that the trial court did inquire as to whether defendant was employed and whether or not he owned property. However, the record does not show any detailed inquiry by the trial court as to the amount of defendant's income, the amount of any indebtedness on his property or car, the amount of any other outstanding obligations, or even the actual amount of the equity defendant allegedly owned in his home and the drilling equipment.

■ The state points out that defendant was able to obtain an appeal bond after his conviction and hire private attorneys for his appeal. Defendant claims that these funds are not relevant to his indigency since they came from friends who were upset at the injustice given him when he was denied counsel at his trial. In any event, defendant's status at the time of his appeal is not relevant to the consideration of his indigency prior to trial since a determination of indigency must be made at any stage of the proceedings upon the defendant's request for counsel.

We find that the record does not show an adequate determination of the factual question of defendant's ability to afford counsel prior to trial. There is nothing in the record to show a balancing of defendant's assets against his liabilities and a consideration of the amount of defendant's disposable income or other resources reasonably available to him.

Since the trial court did not properly exercise its discretion in denying defendant court-appointed counsel, the judgment of the trial court must be reversed and the cause remanded for a new trial.

Judgment reversed and cause remanded.

DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissenting.

I respectfully dissent from the majority opinion wherein it holds the trial court committed reversible error by refusing to appoint pauper counsel for defendant Moore. There was no showing here that Moore was indigent. In fact, the defendant did not claim to the court nor bring forward any evidence whatever to show that he was an indigent person. He did state to the court that, in spite of the fact that he did have assets and did have income, he still did not have available money to hire an attorney. First, we have only his bare statement of this alleged fact. Second, this is not the standard on which courts are required to appoint pauper counsel for defendants.

The trial court told the defendant when he denied his request for appointment of pauper counsel that the court recognized the defendant had an equity in real estate as well as equipment in the well business, and that if he wanted to be represented by counsel he would be required to sell these assets and pay his own attorney. The defendant did not come forward with any figures or facts to show that these assets would not, in fact, pay an attorney to defend him. He apparently opted to keep the assets, rather than dispose of them and use the proceeds in this manner. Probably most people in our society who have real and personal assets and a regular income have difficulty in raising money to meet particular obligations. They must budget carefully and choose priorities to sustain themselves and their families in the midst of difficult economic problems. They should not be required, through the use of their contributions to the public funds, to pay for the obligations of someone who is allowed to retain his own assets rather than liquidate them to meet his own obligations.

The evidence showed the defendant Moore had these assets and was, in fact, able to and did produce the funds to post the twenty-five thousand ($25,000) dollar bond so that he could be free pending trial. Further, after his conviction he hired paid counsel to bring this appeal. The law makes this determination discretionary in the trial judge, and I would find he did not abuse his discretion and affirm his judgment.

GIVAN, C. J., concurs.