Edward Wayne BERGDORFF, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–579A142.

Court of Appeals of Indiana, Second District.

June 10, 1980.

R. Alan Brubaker, Butcher, Ball & Brubaker, Burlington, for appellant.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Defendant Edward Wayne Bergdorff (Bergdorff) appeals his conviction of Battery, challenging the court's order that he pay $150 towards his defense attorney's compensation, admission of a photograph into evidence, sufficiency of the evidence, and the propriety of the sentence imposed.

We affirm the conviction and order the return of Bergdorff's $150.

### FACTS

The facts of this case are:

On August 26, 1978, Joe Bergdorff, his wife, and their three children stopped their car at a package liquor store west of Flora, Indiana. Joe Bergdorff (Joe) is the brother of Defendant. When Joe stepped out of the car, he was attacked by the Defendant, who hit him several times with an automo-

bile jack. Joe's wife ran into the store to call police, and his daughter attempted to stop the beating. As Joe lay on the ground beside the car, Defendant attempted to pick him up by his hair, and later fled. The victim subsequently underwent cranial surgery which lasted two to three hours.

At his first appearance, Bergdorff was informed by the trial judge of his constitutional rights, including his right to court-appointed counsel. Bergdorff requested that the court appoint counsel for him. The trial judge then questioned him as to his assets. Although the Defendant had no assets, including no real estate or life insurance, he did have a potential settlement forthcoming in a personal injury action. The trial judge asked Bergdorff whether he would be willing to apply some of that money, if and when he received it, to defray the county's cost of giving him pauper counsel. Bergdorff responded, "I don't know about that." The court then took the matter under advisement.

Nine days later, a hearing was held on Bergdorff's Request for Counsel. The court asked Bergdorff how he wished to proceed; Bergdorff again said he wanted a court-appointed attorney, and "I'll pay for it myself if I get the money, but . . . the way I am right now, I don't have the money, but I got a good chance of coming up with it." The trial court stated that if Bergdorff was unwilling to apply funds he might later receive, the court was "uncertain as to how to proceed." Bergdorff replied that he would be willing to pay. The court then appointed counsel.

Nearly one month after this, Bergdorff was again brought before the court, this time for a "Hearing on Application of Defendant's Funds." The court had received information that Bergdorff's personal injury claim had been settled. The Defendant stated the settlement was $415, and that this was, to his knowledge, all he would receive. In response to the court's questions, he stated that he was still unable to post bond, and that he did recall the "agreement" regarding his payment for a pauper attorney. He insisted, however, that he would need some of the $280 remaining of the settlement to pay for his needs, such as cigarettes, while in jail, and the rest for rent once he was out of jail; he said at two points that he would repay the county out of each paycheck once he was acquitted. The trial judge computed the cost of two packs of cigarettes per day until the trial date—$107.80—and then ordered that $150.00 of Bergdorff's funds, apparently being held by the Sheriff, be paid to the county clerk. During this hearing, Bergdorff was unrepresented, although the prosecutor was present.

Ten days later Bergdorff's court-appointed counsel represented him in what was apparently a hearing to reconsider the seizure of his funds. At this time Bergdorff stated he believed the seizure was unfair. The record reveals no comment made or action taken by the court.

Bergdorff, represented by court-appointed counsel, was tried by jury and convicted. The court sentenced him to a term of six years and six months and assessed cost of $50.

## ISSUES

On appeal, Bergdorff presents four issues:

1. Did the court improperly order the seizure of $150 of Defendant's funds?

2. Did the court err in admitting into evidence a photograph of blood in the parking lot?

3. Was the evidence sufficient to support the verdict?

4. Did the court err by imposing an unreasonably severe sentence, as well as costs?

## DECISION

*ISSUE ONE*—Did the court improperly order the seizure of $150 of Defendant's funds?

*PARTIES' CONTENTIONS*—Bergdorff argues the trial court was without the power to order his payment of $150 towards the cost of his defense. He claims this makes

his right to counsel contingent upon payment. The State responds that (1) because the court did appoint counsel before ordering such payment, the right to counsel was not made contingent; and (2) a trial judge has the "inherent" power to fashion such an order.

*CONCLUSION*—The court did not make a proper determination of indigency and was without power to extract the money from Bergdorff.

██ We find that the seizure of Defendant's funds was improper; nevertheless, we fail to see how it warrants reversal of the conviction. Bergdorff did receive court-appointed counsel and stated he was satisfied with counsel's performance. This leaves the question of the seizure of Bergdorff's $150.

██ Indigent criminal defendants are entitled to court-appointed counsel. *Gideon v. Wainwright*, (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; *Monroe v. State*, (1961) 242 Ind. 14, 175 N.E.2d 692; *Wizniuk v. State*, (1961) 241 Ind. 638, 175 N.E.2d 1; *State v. Minton*, (1955) 234 Ind. 578, 130 N.E.2d 226. The duty to provide such counsel is a public one, and the costs of the defense must be borne by the taxpayers. *See Knight v. Board of Commissioners*, (1913) 179 Ind. 568, 101 N.E. 1010. Liability for the defense costs rests with the county, and the courts have inherent power to appoint counsel and to order his compensation paid by county funds. *State ex rel. White v. Hilgemann*, (1941) 218 Ind. 572, 34 N.E.2d 129.

It does not necessarily follow that the court should have "inherent" power to order seizure of a defendant's funds, regardless of whether the defendant agrees. Some states have enacted "recoupment" statutes [1] which permit the State to recover its expenditures after the trial, if and when an indigent defendant obtains money.[2] Indiana, however, does not have a recoupment statute,[3] and there is nothing in Indiana case law to suggest that an indigent defendant can be required to forfeit funds as a condition precedent to representation. In fact, the court-appointed attorney is not entitled to compensation until the representation has been completed. *See Sparks v. State*, (1964) 245 Ind. 245, 196 N.E.2d 748.

Recently in *Moore v. State*, (1980) Ind., 401 N.E.2d 676, our Supreme Court in a split decision set forth the procedure for determination of indigency, holding that a defendant does not have to be "totally without means" to be entitled to court-appointed counsel. If he lacks financial resources to employ an attorney without incurring "substantial hardship," the court must appoint pauper counsel. *Id.* at 678. *Accord, State ex rel. Wise v. Marion Criminal Court*, (1956) 235 Ind. 447, 134 N.E.2d 221. *Moore* requires that the court should consider "resources reasonably available" to the defendant; however, it does not intimate that such resources may be seized *or* that the defendant may be deemed *partially* able to pay.

1. The federal reimbursement provision is found in 18 U.S.C. § 3006A(f).

2. The United States Supreme Court has upheld such legislation, *see Fuller v. Oregon*, (1974) 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642, but has held such a statute violates equal protection if it does not treat the indigent-defendant debtor as the equal of one who has employed private counsel. *See James v. Strange*, (1972) 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600. Recoupment is not without criticism. The American Bar Association disapproves of the practice, except in the case of one who fraudulently misrepresents his financial condition. *See ABA Standards for Criminal Justice, Providing Defense Services* § 6.4 at 58–59 (Approved Draft, 1968).

3. At one time, Indiana had two separate statutes providing for recoupment under limited circumstances. These statutes applied *only* to public defenders and *only* in counties having populations of 400,000 or more or between 100,000 and 175,000. Notably, the laws authorized recoupment after defense services had been rendered. Carroll County, in which the instant case occurred, was not covered by these statutes, and the attorney involved was not a public defender. In any event, the laws were repealed in part in 1973 and in toto in 1978. *See* Ind.Code § 33–9–6–1 (Repealed by Acts 1973, P.L. 308, Sec. 2); Ind.Code § 35–11–11–1 (Repealed by Acts 1978, P.L. 2, § 3555).

Another important feature of the *Moore* case is that it mandates an examination as to assets, income and liabilities. The trial judge here did not conduct an inquiry into Bergdorff's liabilities. As in *Moore*, there is no evidence of any attempt to evaluate insofar as practical the defendant's "total financial picture."

*ISSUE TWO*—Did the court err in admitting into evidence a photograph of blood in the parking lot?

*PARTIES' CONTENTIONS*—Bergdorff argues that the court erred in admitting a photograph showing blood in the parking lot, because the exhibit was not a fair representation of the crime scene: it showed blood covered by toweling which exaggerated the scene. This, he contends, served only to inflame the jury to his prejudice. The State responds that the exhibit was admissible as relevant in showing the proximity of the blood to Joe Bergdorff's automobile.

*CONCLUSION*—Admission of the photograph was not error.

■ Admission of photographs is within the sound discretion of the trial court and will not be disturbed except for an abuse of that discretion. *Rogers v. State*, (1979) Ind., 383 N.E.2d 1035; *Crane v. State*, (1978) Ind., 380 N.E.2d 89. The fact that a photograph might arouse the jury is not alone sufficient to justify its exclusion from evidence if it is material and relevant. *Porter v. State*, (1979) Ind., 391 N.E.2d 801.

■ Relevancy in this regard is determined by whether a witness would be permitted to describe what is depicted in the photograph. *Porter, supra; Propes v. State*, (1978) Ind., 382 N.E.2d 910. Photographs of the scene of the crime are admissible if they are competent and relevant aids to jurors in orienting themselves and in understanding the evidence. *Inman v. State*, (1978) Ind., 383 N.E.2d 820.

■ In this case, the photograph showed that the attack occurred immediately beside the automobile. This served to corroborate the testimony of the victim and his family. It also cast doubt on Bergdorff's assertion of self-defense: he contended that he did not even *reach* for the jack in his car until Joe had come three or four feet towards him. The photograph shows the blood about two feet from Joe's car. It was clearly relevant.

Moreover, the fact that the photograph depicted a towel besides the blood did not require the court to exclude the exhibit. Not every discrepancy between a photograph and its subject will warrant such exclusion. *Gill v. State*, (1977) 267 Ind. 160, 368 N.E.2d 1159. While it is true that photographs which distort or are likely to confuse the jury should not be admitted, *Cambron v. State*, (1975) 262 Ind. 660, 322 N.E.2d 712, the judge here reasoned that the jurors would realize that toweling tends to enlarge a liquid it absorbs. He specifically stated that he would accept a precautionary instruction on this point, yet the record discloses no such instruction tendered.

We cannot say that the ruling on this exhibit was an abuse of the substantial discretion accorded the trial court.

*ISSUE THREE*—Was the evidence sufficient to support the verdict?

*PARTIES' CONTENTIONS*—Bergdorff contends the evidence was not sufficient to support his conviction; more particularly, he points out that the prosecution failed to rebut his claim of self-defense. The State argues that its case-in-chief was sufficient to rebut any inferences of self-defense raised by Bergdorff.

*CONCLUSION*—The verdict was supported by sufficient evidence.

■ In reviewing the sufficiency of the evidence, we will not reweigh the evidence nor judge the credibility of the witnesses. *Jones v. State*, (1978) Ind., 377 N.E.2d 1349. We will look only to the evidence most favorable to the State, along with all reasonable inferences to be drawn therefrom. *Poindexter v. State*, (1978) Ind., 374 N.E.2d 509.

 With this scope of review in mind, we must agree with the State on the sufficiency issue. The State's evidence showed that the victim had "nothing in his hands" when Bergdorff attacked him. Three witnesses testified to seeing the attack on the victim; a fourth saw Bergdorff standing over the prostrate victim, holding the automobile jack. In addition, there was testimony that when Bergdorff grabbed his beaten brother by the hair, he said, "Oh, come on, big brother, you ain't dead." This was sufficient to prove the offense.

 Moreover, the State is not required to introduce specific evidence to rebut a claim of self-defense. *Hester v. State,* (1978) 267 Ind. 697, 373 N.E.2d 141. When a defendant has raised the issue, the State may either rebut it directly or rely on the sufficiency of its case-in-chief. *Id.; Jennings v. State,* (1974) 262 Ind. 476, 318 N.E.2d 358; *Nuss v. State,* (1975) 164 Ind. App. 396, 328 N.E.2d 747. Here the State chose to do the latter, having already adduced the evidence mentioned above. To require the State to offer rebuttal under these circumstances would be to require duplicitous testimony.

*ISSUE FOUR* —Did the court err by imposing an unreasonably severe sentence, as well as costs?

*PARTIES' CONTENTIONS* —Bergdorff argues that the sentence imposed was unreasonably severe, and that the court improperly imposed costs of $50 upon him, inasmuch as the court found him to be indigent. The State counters that the sentencing determination was consistent with Indiana law. The State fails to address the court's imposition of costs.

*CONCLUSION* —The issue of costs is waived; the sentence was not unreasonable.

 The imposition-of-costs issue was not included in Defendant's Motion to Correct Errors. That argument is therefore waived under Ind.Rules of Procedure, Trial Rule 59.

 Bergdorff's remaining argument as to his sentence is wholly without merit.

Briefly stated, his contention is that the court did not give due regard to mitigating circumstances and based the sentence upon a pre-sentence report which contained discrepancies.

His argument fails for a number of reasons. First, Ind.Code § 35–4.1–4–7 does not make consideration of mitigating circumstances mandatory. It reads: "The court *may* consider these factors as mitigating circumstances . . . ." *Id.* at (b). [Emphasis added.] Second, Bergdorff has failed to show how his circumstances came within those statutorily delineated: he claims as "mitigating circumstances" his statement that he had a job awaiting him, and his brother's (the victim's) suggestion that Bergdorff should not be incarcerated. These fall outside the statute. Additionally, Bergdorff ignores the fact that the trial judge specifically stated he was weighing mitigating and aggravating factors in determining punishment.

Among the "aggravating" circumstances the court considered was "a history of criminal activity." Ind.Code § 35–4.1–4–7(c)(2). Bergdorff insists that this consideration was improper because the State did not proffer "any record, evidence or other material" concerning previous offenses. The applicable statute does not require a certified record of prior convictions. Rather, it states that the sentencing court must consider a written pre-sentence report prepared by a probation officer. *See* Ind.Code § 35–4.1–4–9; *Gardner v. State,* (1979) Ind., 388 N.E.2d 513, 517. It is clear from the record that the court did so here.

This is not to say that the accuracy of the report may not be challenged. The report's contents must be disclosed to the defendant. Ind.Code § 35–4.1–4–13. The record shows this was done; defense counsel told the judge he had read the report to this Defendant, as Bergdorff was to a large degree illiterate. Furthermore, Bergdorff was given an opportunity to controvert the report, as the statute requires. *See id.* Through his counsel he did so. It remained uncontroverted following his disclosures, that Bergdorff had several prior convictions.

The statute was followed. We find no error in the sentencing.

For the foregoing reasons, the conviction and sentence are affirmed; the trial court is ordered to return to Defendant the $150 seized to defray the costs of pauper counsel.

SHIELDS and SULLIVAN, JJ., concur.