


FILED

Jan 30 2024, 11:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 23S-CR-232

## Tailar L. Spells,
*Appellant (Defendant below)*

—v—

## State of Indiana,
*Appellee (Plaintiff below)*

---

Argued: September 28, 2023 | Decided: January 30, 2024

Appeal from the Marion Superior Court
No. 49D33-2111-F6-36202
The Honorable Clayton A. Graham, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CR-1889

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa, Slaughter, and Molter concur.

**Goff, Justice.**

Indiana's criminal code authorizes trial courts to impose a multitude of fines, court costs, and fees on defendants. By statute, a trial court may order payment of nearly all these expenses only after considering the defendant's ability to pay. Conversely, our criminal code also authorizes trial courts, with a defendant's consent, to retain cash bail to pay fines, costs, fees, and public-defender expenses. Today, we explore whether trial courts must consider a defendant's ability to pay before retaining cash bail under such an agreement. Ultimately, we reach three principal conclusions: the statutory agreement permits application of cash bail to the whole of a defendant's public-defender costs; a court may retain cash bail to pay most other fines, costs, and fees only after considering the defendant's ability to pay; and, applying a recently enacted statute, the indigency determination in this case was incomplete, thus warranting partial remand to the trial court.

# Facts and Procedural History

One late night in November 2021, as officers from the Indianapolis Metropolitan Police Department were trying to break up an altercation outside Tiki Bob's, a downtown bar, Tailar Spells approached the scene and spat on Officer Lynnford Parker. After a struggle, Officer Parker subdued and arrested Spells, whom the State then charged with Level 6 felony battery by bodily waste and Class A misdemeanor resisting law enforcement.[1] The trial court set a $250 cash bond, which a third party, Diane Rolle, deposited in full. "Pursuant to Indiana Code 35-33-8-3.2," both Spells and Rolle signed a cash-bond agreement, permitting the court, upon full satisfaction of all bond conditions, to "retain all or a part of the cash to pay publicly paid costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." App. Vol. II, p. 24.

---

[1] *See* Ind. Code §§ 35-42-2-1(c)(2), (e)(2) (2020); I.C. § 35-44.1-3-1(a)(1) (2021).

At a pretrial hearing, the court appointed a public defender and imposed a $100 supplemental public-defender fee.[2] After a bench trial, Spells was convicted on the battery charge but acquitted of resisting law enforcement. The court then held a sentencing hearing and imposed 365 days in the county jail, of which 363 days were suspended to probation, and 40 hours of community service. The court also imposed a $20 fine and $185 in various fees and court costs, but found Spells indigent as to probation fees. Probation was to terminate upon completion of community service and payment of the fine and all costs. A few weeks later, the court granted the probation department's request to apply $245 from Spells's cash bond to her fine, costs, and fees.[3] That left $60 still owed, which the chronological case summary indicates has since been paid. Spells completed her community service and the court reduced her conviction to a misdemeanor.[4]

Spells then appealed, arguing that the trial court had failed to adequately inquire into her ability to pay her fine, costs, and fees. The Court of Appeals affirmed in a memorandum decision, relying on *Wright v. State* in holding that cash bail may be applied, under a cash-bail agreement, to fines, costs, and fees without making an indigency determination. *Spells v. State*, No. 22A-CR-1889, 2023 WL 3144084, at *1–2 (Ind. Ct. App. April 28, 2023) (citing 949 N.E.2d 411 (Ind. Ct. App. 2011)). The panel also ruled that Spells's payment of the last $60 mooted her appeal as to that money. *Id.* at *2–3.

---

[2] *See* I.C. § 35-33-7-6(c)(1) (2020).

[3] We presume the remaining $5 of the cash bail was reserved for the fee collected by the clerk from each bail deposit. *See* I.C. § 35-33-8-3.2(d)(1) (2023).

[4] *See* I.C. § 35-50-2-7(c) (2019).

Spells sought transfer to this Court, which we granted, thus vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).[5]

## Standards of Review

An abuse-of-discretion standard of review applies to a trial court's sentencing decisions and to the imposition of costs and fees. *Holder v. State*, 119 N.E.3d 621, 624 (Ind. Ct. App. 2019). This standard allows reversal only when a decision "is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Abbott v. State*, 183 N.E.3d 1074, 1083 (Ind. 2022) (internal quotation and citation omitted). But a "statute's meaning and scope are legal questions we review de novo." *Garner v. Kempf*, 93 N.E.3d 1091, 1094 (Ind. 2018) (citation omitted).

## Discussion and Decision

Our analysis commences with the agreement Spells made under Indiana Code section 35-33-8-3.2(a) (the cash-bail statute), which we hold permits the retention of public-defender costs—but not most other fines, costs, or fees—without an indigency determination. We then proceed to interpret the requirements of the recently enacted indigency statute and review whether the trial court complied with those requirements when ordering Spells to pay a fine, costs, and fees. We conclude that a partial remand is necessary for the trial court to inquire more thoroughly into Spells's ability to pay these expenses.

---

[5] We note that Spells did not raise her appeal issues before the trial court. No objection was required to preserve a challenge to her fine, because a fine, like restitution, is part of the sentence. *See Bell v. State*, 59 N.E.3d 959, 962 (Ind. 2016). But costs (which include most fees) are not part of the sentence, I.C. § 33-37-2-2(a), and so Spells's challenge to these could arguably be waived. However, as the State addressed the issues head-on without arguing for waiver, we exercise our discretion to excuse any such default. *See Leonard v. State*, 73 N.E.3d 155, 165 n.6 (Ind. 2017).

## I. Spells's agreement permitted retention of her cash bail to defray public-defender costs, but retention of most other costs and fees required an indigency hearing.

Trial courts may release criminal defendants before trial on reasonable bail conditions calculated to "assure the defendant's appearance at future proceedings" and "'the public's physical safety.'" *DeWees v. State*, 180 N.E.3d 261, 267 (Ind. 2022) (quoting Ind. Code § 35-33-8-3.2(a)). Indiana's statutory scheme provides for "considerable judicial flexibility in the execution of bail." *Id.* at 268. Indeed, trial courts have several options in deciding on the form of bail. Bonds backed by "sufficient solvent sureties" are one option. I.C. § 35-33-8-3.2(a)(1)(A) (2023). Another is cash or securities, either "in an amount equal to the bail" or "in an amount not less than ten percent (10%) of the bail" along with execution of a "bail bond." I.C. §§ 35-33-8-3.2(a)(1)(B), (a)(2)(A).

When, as here, a trial court "requires the defendant to deposit cash or cash and another form of security" equal to the bail amount, the court may require both the defendant and the person depositing bail to sign an agreement authorizing the court to retain the cash "to pay publicly paid costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." I.C. § 35-33-8-3.2(a)(1).[6] When a trial court requires this kind of agreement, "the defendant or person who makes the deposit on behalf of the defendant shall be advised" of the stated conditions before the agreement's execution. *Id.* This provision, added in 2022, mandates explicit prior notice

---

[6] The statute effectively codifies *State ex rel. Williams v. Ryan*, in which we approved a trial court's requirement that "the bond be available for payment of costs, fine, restitution and necessary attorney fees." 490 N.E.2d 1113, 1113 (Ind. 1986). Our approval was abrogated as to fines, costs, most fees, and restitution by a former bail statute which has itself been repealed. *See* I.C. §§ 35-33-8-3.1(a)(2), (b), (d) (1990) (repealed by Pub. L. No. 107-1998, § 6, 1998 Ind. Acts 1360, 1366); *Bennett v. State*, 668 N.E.2d 1256, 1258 (Ind. Ct. App. 1996).

that the defendant's deposit may be lost. *See* Pub. L. No. 147-2022, § 6, 2022 Ind. Acts 1854, 1861–62.

Here, Spells signed an agreement containing the necessary advisement. And this agreement, the State insists, authorized the trial court to retain her cash bail to pay her public-defender costs, fine, court costs, and other fees without making an indigency determination at all. Spells disagrees. Without arguing that she lacked adequate notice, Spells contends that the statute anticipates an indigency determination preceding the assessment of **all** her expenses and their retention from cash bail.

These arguments require us to interpret the cash-bail statute. In doing so, we begin with the statutory language itself. *Powell v. State*, 151 N.E.3d 256, 265 (Ind. 2020). We read the "words in their plain and ordinary meaning, taking into account the structure of the statute as a whole." *Town of Linden v. Birge*, 204 N.E.3d 229, 237 (Ind. 2023) (internal quotation and citation omitted). We presume the General Assembly "intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.* (internal quotation and citation omitted). We are mindful "of what the statute says and what it doesn't say" and "avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results." *Id.* (internal quotation and citation omitted). Our ultimate goal is to "to determine and give effect to the legislature's intent." *Id.* (internal quotation and citation omitted).

### A. A court need not determine a defendant's ability to pay before retaining their representation costs.

We first address the statute's treatment of "publicly paid costs of representation." Spells argues that this term does not include her $100 supplemental public-defender fee because that fee is a "flat fee" unreflective of actual costs. Oral Argument at 06:22–06:55. And she reads the statute as permitting retention only of representation costs that the trial court may order after an indigency determination. We disagree on both counts and hold that the court had authority to retain the $100 fee from Spells's cash bail.

The term "publicly paid costs of representation" refers to "the portion of all attorney's fees, expenses, or wages incurred by the county" that are "directly attributable to the defendant's defense." I.C. § 35-33-8-1.5(1) (1987). The phrase "all attorney's fees, expenses, or wages" is an expansive one, indicating the entire incremental cost of the defendant's own defense and excluding only "overhead expenditures made in connection with the maintenance or operation of a governmental agency." I.C. § 35-33-8-1.5(2). We must ask, therefore, whether Spells's supplemental public-defender fee represents part of this incremental cost and, thus, whether it falls within the "publicly paid costs of representation."

Our reading of the public-defender statutes informs us that the supplemental public-defender fee is indeed intended to defray part of the costs "directly attributable to the defendant's defense." A criminal defendant who "requests assigned counsel" is entitled to a determination of indigency under Indiana Code section 35-33-7-6.5. I.C. § 35-33-7-6(a) (2020). The court must consider the defendant's "assets," "income," and "necessary expenses" in determining their ability to pay for representation. I.C. § 35-33-7-6.5(a) (2020). If the defendant is "found to be indigent," counsel must be assigned. I.C. § 35-33-7-6(a). If, however, the court finds that the defendant "is able to pay **part of the cost of representation** by the assigned counsel," the court "shall order" a supplemental public-defender fee of $100 in a felony case and $50 in a misdemeanor case. I.C. § 35-33-7-6(c) (emphasis added).[7] This language tells us that the supplemental fee is intended as a contribution toward the actual cost of representing the defendant, leading us to conclude that the "publicly paid costs of representation" include the supplemental public-defender fee.

Spells's second line of defense is, in effect, to read the cash-bail statute as permitting retention only of those "publicly paid costs of representation … that the court may order the defendant to pay if the defendant is

---

[7] We note in passing that the supplemental public-defender fee need not be assessed at the initial hearing, but can be left for the sentencing hearing.

convicted." To reiterate, the statute permits a trial court to "retain all or a part of the cash to pay publicly paid costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." I.C. § 35-33-8-3.2(a)(1). Under Spells's interpretation, the relative clause ("that the court may order") modifies both the "publicly paid costs of representation" and "fines, costs, fees, and restitution." We find this reading of the statute unpersuasive for three reasons.

First, in the adjacent code section 35-33-8-3.2(a)(2), governing the retention of ten-percent cash bail, the phrase "publicly paid costs of representation" is found in a paragraph separate from the "fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." This indicates two distinct concepts.

Second, a useful rule of thumb is that "a limiting clause or phrase" is ordinarily "read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (citing 2A N. Singer, *Sutherland on Statutory Construction* § 47.33, p. 369 (6th rev. ed. 2000)). This "rule of the last antecedent" suggests that only the phrase "fines, costs, fees, and restitution" is modified by the relative clause "that the court may order." *See id.*

Lastly, representation costs are not, in most cases, costs "that the court may order the defendant to pay if the defendant is convicted." Rather, they may be imposed under two code provisions whether the defendant is convicted or not. *See* I.C. § 35-33-7-6(c) (the supplemental public-defender fee); I.C. § 33-40-3-6(a) (2023) (requiring reasonable attorney's fees to be imposed on a defendant found able to pay "at any stage of a prosecution"); *but see* I.C. § 33-37-2-3(e) (2019) (requiring "part of the costs of representation" to be imposed on a "convicted person" who is able to pay them). The "publicly paid costs of representation" referred to in Spells's cash-bail agreement are not, therefore, likely to be only those the trial court could impose after her conviction.

From this textual and structural analysis, we hold that a trial court may retain the whole of a defendant's incremental representation costs without making the indigency determination that is otherwise required for

assessment of a supplemental public-defender fee. In this respect, we follow the results reached in *Wright v. State*, 949 N.E.2d 411 (Ind. Ct. App. 2011), and *Obregon v. State*, 703 N.E.2d 695 (Ind. Ct. App. 1998), each of which concerned cash-bail language similar to that involved here.

Our interpretation of the statute also meshes with the General Assembly's presumed goal of ensuring that defendants who can access bail money contribute financially toward their defense. This policy reflects certain realities. The ninety-two counties of Indiana face serious challenges in funding public defense. According to 2020 figures, Indiana ranks forty-second out of the fifty states for the number of attorneys per capita. American Bar Ass'n, *Profile of the Legal Profession* 25 (2021), https://www.americanbar.org/content/dam/aba/administrative/news/2021/0721/polp.pdf [https://perma.cc/N59Q-DA66]. Over forty percent of our counties have fewer than one attorney for every thousand inhabitants. Katie Stancombe, *Stretched to Serve in 'Legal Deserts'*, Indiana Lawyer, Sep. 2, 2020, https://www.theindianalawyer.com/articles/stretched-to-serve-in-legal-deserts. For public defenders in particular, funding is "a constant concern" at the county level, the lack of which has led to "staffing shortages" and "excessive caseloads." Indiana Task Force on Public Defense, *Findings and Recommendations to the Indiana Public Defender Commission* 54 (2018), https://www.in.gov/publicdefender/files/Indiana-Task-Force-Report.pdf [https://perma.cc/U8ZB-MD29]. Indeed, more than half of the attorneys responding to one survey "indicated they did not have enough resources to do their jobs to the level they aspire." *Id.* at 28. Another reality is that in some cases, as former Chief Justice Shepard observed, a "defendant who manages to come up with cash to get sprung" from pre-trial confinement "soon re-emerges as the indigent without means to make restitution to the victims of his crime." *State ex rel. Williams v. Ryan*, 490 N.E.2d 1113, 1115 (Ind. 1986) (Shepard, J., dissenting). The same goes, perhaps, for the cost of hiring counsel.

There will, of course, be cases involving genuine hardship on defendants and worthy potential uses for bail money other than paying public defenders. We therefore emphasize that the language of code section 35-33-8-3.2(a)(1) is permissive. The statutory agreement "allows" the court to retain cash for representation costs, and the defendant and

depositor are notified that the court "may" do so.[8] In view of alternative uses for a defendant's cash bail, such as restitution to victims or paying for the needs of defendants and their dependents, it may not always be desirable to retain the entire allowable representation costs.

Here, the trial court was required to make an indigency determination under Indiana Code section 35-33-7-6.5 before imposing Spells's supplemental public-defender fee. However, the trial court was also authorized by the cash-bail agreement to apply $100 from Spells's cash bail to the cost of her defense without inquiring into her ability to pay. It is, therefore, a moot question in this case whether the trial court made an adequate indigency determination respecting the supplemental fee.

## B. An indigency hearing is necessary before retaining cash bail to pay most other fines, costs, and fees.

We turn next to the fines, costs, and fees "that the court may order the defendant to pay if the defendant is convicted." *See* I.C. § 35-33-8-3.2(a)(1). The issue is whether the trial court could retain Spells's cash bail to pay her fine, costs, and fees (other than her representation costs) without inquiring into her ability to pay. We first examine whether the fine, costs, and fees imposed on Spells would require an indigency hearing absent a cash-bail agreement, concluding that they virtually all would. We then consider whether Spells's cash-bail agreement supplanted the hearing requirement and hold that it did not.

---

[8] The same is not necessarily true for ten-percent cash-bail agreements under code section 35-33-8-3.2(a)(2), which provides that the "clerk shall also retain from the deposit under this subdivision fines, costs, fees, and restitution as ordered by the court" and "publicly paid costs of representation."

### 1. Fines, costs, and fees generally require an indigency hearing when there is no cash-bail agreement.

To start with, we observe that the imposition of a fine usually requires an indigency hearing. By statute, "whenever the court imposes a fine, it shall conduct a hearing to determine whether the convicted person is indigent" and it may order the payment of a fine only "[i]f the person is not indigent." I.C. § 35-38-1-18(a) (2007). When costs are imposed, too, the court "shall conduct a hearing" into the person's indigency and order the costs paid only "[i]f the person is not indigent." I.C. § 33-37-2-3(a). Spells's fine and costs would, therefore, usually be subject to a requirement for an indigency hearing.

The requirements for imposing fees are a little trickier to trace. Under code section 33-37-2-5, "costs" include the "fees prescribed by IC 33-37-4-1," which "may be collected from a defendant against whom a conviction is entered."[9] And costs, as we've noted, usually cannot be imposed without an indigency hearing. I.C. § 33-37-2-3(a).

We have examined the fees assessed against Spells by the trial court according to its sentencing order. Almost all of them (*e.g.*, the automated record-keeping fee) are prescribed by code section 33-37-4-1, making them "costs" and thus subject to an indigency hearing. One $4 item listed as "Indianapolis Metropolitan Police" we presume to be the "law enforcement continuing education program fee," which requires an indigency determination pursuant to code section 33-37-2-5. *See* I.C. § 33-37-4-1(b)(4) (2023); I.C. § 33-37-5-8(c) (2015). However, the $2 jury fee authorized by code section 33-37-5-19 is not part of the "costs" for which a convicted defendant is liable, because it is not prescribed by code section

---

[9] We note that code section 33-37-1-3(b) states in broad terms that costs "include fees." We rely here instead on code section 33-37-2-5, which defines as costs only a subset of the fees assessed against convicted persons. The latter, more specific statute concerns costs in criminal cases and controls over the former, more general statute. *See State v. Neukam*, 189 N.E.3d 152, 155 (Ind. 2022) (citations omitted) ("general statutes yield to more specific statutes").

33-37-4-1.[10] No indigency hearing appears, therefore, to be necessary for the jury fee.

To sum up, imposition of Spells's fine, costs, and every fee except her jury fee would usually necessitate an indigency hearing. We must consider, then, whether her cash-bail agreement supplanted that requirement.

## 2. A cash-bail agreement does not supplant the requirement for an indigency hearing.

Code section 35-33-8-3.2(a)(1) allows the court, by agreement, to retain cash bail to pay "fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." The parties dispute whether this language anticipates the trial court holding the usual indigency hearing or whether it dispenses with it.

In *Wright*, the Court of Appeals concluded that "the absence of language requiring an indigency hearing" in the cash-bail statute meant that no such hearings were required when cash bail was retained to pay fines, costs, and fees. 949 N.E.2d at 416 (citing parallel language in code section 35-33-8-3.2(a)(2)). To impose such a hearing, the *Wright* panel reasoned, "would render the bail bond agreement meaningless." *Id.* We disagree. The cash-bail statute can be read in harmony with the fines, costs, and fees statutes in a way that gives effect to them all.

The key phrase in the cash-bail statute refers to the expenses "that the court **may** order the defendant to pay" if convicted. *See* I.C. 35-33-8-3.2(a)(1) (emphasis added). "May" could refer here to what the court is permitted or authorized to do, or to what it might possibly do. If "may" is intended in its permissive sense here, it arguably provides the trial court an independent source of authority to order payment of fines, costs, and fees without an indigency hearing. Equally, though, "may" could simply refer to the possibility of the court ordering payments in the usual course

---

[10] Amended last year to $6. Pub. L. No. 237-2023, § 2, 2023 Ind. Acts 3940, 3941.

after indigency hearings. We find the latter reading the more natural of the two: the defendant agrees to retention of whatever fines, costs, and fees the trial court might possibly order—under its authority granted elsewhere. In short, this is a statute dealing with the disposition of cash-bail, not one authorizing the imposition of fines, costs, and fees without hearings.

Furthermore, when two statutes concern the same subject matter, we prefer to read them together "to harmonize and give effect to each." *Clippinger v. State*, 54 N.E.3d 986, 989 (Ind. 2016) (internal quotation and citation omitted). Thus, the payment of fines, costs, and fees may be ordered as usual after indigency hearings, but the amounts so ordered may be retained from cash bail. This interpretation of the statutory scheme creates a measure of harmony. A reading of the cash-bail statute as authorizing the court to order payments without indigency hearings, by contrast, would render ineffective the indigency requirements in the fines, costs, and fees statutes as far as cash bail is concerned.

We conclude that the required procedure is for a trial court first to hold an indigency hearing and only then, under the terms of any applicable agreement, to retain from cash bail any fine, costs, or fees that the defendant is able to pay. Just as an indigent defendant may not be ordered to pay unaffordable fines, costs, or fees, neither may a court order their cash bail to be applied as a form of payment.

The cash-bail statute does not, therefore, provide trial courts as much authority to retain money for fines, costs, or fees as it does for publicly paid costs of representation. Still, we think the statute helps meet the need to "facilitate meaningful imposition of fines, costs and restitution." *See Bennett v. State*, 668 N.E.2d 1256, 1258 (Ind. Ct. App. 2016). Where the cash-bail agreement is in place, a judgment for these expenses need not be "a hollow attempt to impose justice." *See id.*

Anticipating that an indigency hearing might indeed have been required, the State argues that the trial court could have held one at any time before Spells completed her sentence. Had the trial court suspended Spells's fine and costs, this would be correct. *See* I.C. § 35-38-1-18(b), I.C. § 33-37-2-3(b). Indeed, this Court has recommended such a procedure.

*Whedon v. State*, 765 N.E.2d 1276, 1279 (Ind. 2002). But nothing in the record here suggests that the fine or costs were suspended or even that a future hearing was anticipated. *See Holder*, 119 N.E.3d at 624. Rather, the trial court conditioned the end of Spells's probation on "payment of court costs and [the] fine" and deducted partial payment without holding a fresh indigency hearing. App. Vol. II, p. 16. We therefore reject the State's argument.

We hold that the retention from Spells's cash bail of $143 in fine, fees, and costs could not properly be ordered until an adequate indigency hearing and determination took place as to these items.[11] In Part II, we turn to the question of whether an adequate indigency determination was in fact made.

## II. The trial court's inquiry was insufficiently thorough under the recently enacted indigency-determination statute.

As we have explained, the trial court could not retain $143 of Spells's cash bail without an indigency hearing. The same goes for the $60 that Spells voluntarily paid. We begin this part of the opinion by holding that Spells's appeal as to that $60 is not moot. We then set out the proper standard for indigency determinations under the recently enacted code section 35-33-7-6.5. Finally, we apply the new standard to the record in this case.

### A. Spells's claim to the $60 she paid is not moot.

The Court of Appeals held that Spells mooted her appeal as to the last $60 she owed by paying it off. *Spells*, No. 22A-CR-1889, at *2–3. A case

---

[11] The trial court allowed a $245 deduction from Spells's cash bail. Subtracting $100 in representation costs and the $2 jury fee leaves $143 applied to the fine and other costs and fees.

becomes moot "when the controversy at issue has been ended, settled, or otherwise disposed of so that the court can give the parties no effective relief." *E.F. v. St. Vincent Hosp. & Health Care Ctr.*, 188 N.E.3d 464, 466 (Ind. 2022) (citation omitted). Here, reimbursement of Spells's $60 would be effective relief, so her appeal remains justiciable as to the $60 balance payment. *See De La Cruz v. State*, 80 N.E.3d 210, 213 (Ind. Ct. App. 2017) (holding that an appeal of already-paid probation fees was not moot); *Long Manor Owners' Ass'n, Inc. v. Alungbe*, 292 A.3d 85, 88 n.5 (Conn. Ct. App. 2023) (citation omitted) (holding that payment of a judgment did not moot the case as "restitution" of the money could still be ordered).

The remainder of Part II applies to this $60 as well as $143 of the money retained from Spells's cash bail.

## B. Code section 35-33-7-6.5 replaces the inconsistent standards under appellate caselaw for indigency determinations.

In 2020, the General Assembly enacted a new statute governing indigency determinations in a criminal case. When making such a determination, a trial court "shall" consider a defendant's "assets," "income," and "necessary expenses." Pub. L. No. 140-2020, § 2, 2020 Ind. Acts 1284, 1285 (codified at I.C. § 35-33-7-6.5(a)). The court "may consider" a defendant's eligibility for SNAP, TANF, or "another need based public assistance program" as sufficient evidence of indigency. I.C. § 35-33-7-6.5(b). The court may make an "initial indigency determination" pending receipt of evidence. I.C. § 35-33-7-6.5(c). And, lastly, the court may "prorate" fines, fees, and costs to what a defendant "can reasonably afford." I.C. § 35-33-7-6.5(d). We note that a defendant may be deemed unable to pay one cost, yet able to pay another. *See Meeker v. State*, 182 Ind. App. 292, 302, 395 N.E.2d 301, 307 n.5 (1979).

Before the new statute, appellate caselaw governed Indiana's standards for indigency determinations, albeit somewhat inconsistently. In *Moore v. State*, this Court addressed the indigency inquiry necessary for assignment of counsel. 273 Ind. 3, 7–8, 401 N.E.2d 676, 679 (1980). Our opinion

required a trial court to conduct "as thorough an examination of the defendant's total financial picture as is practical," including "a balancing of assets against liabilities and a consideration of the amount of the defendant's disposable income or other resources reasonably available to him after the payment of his fixed or certain obligations." *Id.* at 7, 401 N.E.2d at 679 (citations omitted). In contrast to this fairly rigorous standard, we held in *Bell v. State* only that trial courts must "engage in some inquiry of the defendant" in deciding their ability to pay restitution and suggested some factors that courts "may consider." 59 N.E.3d 959, 963–64 (Ind. 2016). A leading recent case on probation fees, *Burnett v. State*, likewise set forth a broad standard under which a trial court must ask questions about a defendant's "actual ability to pay," and suggested some relevant factors. 74 N.E.3d 1221, 1227 (Ind. Ct. App. 2017).

The General Assembly has now firmed up the requirements for determining indigency as to representation, I.C. § 35-33-7-6(a), and as to fines, costs, and fees, I.C. § 35-33-7-6.5(d). Courts must consider three distinct items—assets, income, and necessary expenses—that the legislature deems essential in calculating a defendant's ability to pay. I.C. § 35-33-7-6.5(a). We reiterate that it is incumbent on trial courts to consider these factors. This means that if the parties fail to provide the information, courts themselves must make inquiries calculated to bring out the necessary evidence. *Bell*, 59 N.E.3d at 964. As to the burden of proof, "once a defendant presents or the court elicits from [the] defendant information demonstrating an inability to pay," then the burden "shifts to the State to rebut the evidence." *Id.*

Of course, trial courts will be aware of a defendant's cash bail as an "amount set aside which can be used for payment." *Spells*, No. 22A-CR-1889, at *2. This money will sometimes figure into the ability-to-pay equation as an asset belonging to the defendant themselves. *Garner*, 93 N.E.3d at 1098.[12] Nothing prevents a trial court from considering the

---

[12] Sometimes does not mean always. Since 2022, the balance of cash bail is to be remitted to the depositor, who is not necessarily the defendant. Pub. L. No. 147-2022, § 6, 2022 Ind. Acts 1854, 1863 (codified at I.C. § 35-33-8-3.2(b)).

amount of cash bail, proportioning the aggregate of all costs and fees to it, and checking with the defendant that the total is affordable in light of their means and expenses.

As for appellate review, we will defer to the sound discretion of a trial court when the record discloses a reasonable inquiry into the mandatory factors as they pertain to the defendant's ability to pay. Other relevant factors may also need to be examined in an individual case, once brought to the court's attention, such as the defendant's living situation, employment history, potential earnings, social security benefits, state of health, and dependents. *See Bell*, 59 N.E.3d at 963 (discussing some of these factors). The record must reflect evidence of the defendant's ability to pay the expenses imposed. *Id.* at 966. If one of the mandatory factors, especially either the defendant's income or necessary expenses, is passed over, or if the inquiry is unreasonably superficial, it may be appropriate to vacate and remand for another hearing. We next apply this newly clarified standard to Spells's case.

### C. Spells's indigency determination was incomplete.

The trial court first questioned Spells about her means at a pretrial hearing in December 2021. At that time, Spells was working thirty to forty hours a week in daycare, earning $800 gross biweekly, living with her sister, and had no children. We note that the court did not inquire further into Spells's necessary expenses or request dollar amounts for them. The court nonetheless appointed counsel, implicitly finding Spells indigent, and imposed the $100 supplemental public-defender fee.

The trial court next heard evidence of Spells's circumstances at the sentencing hearing in July 2022. Responding to questions from defense counsel, Spells explained that she was employed in full-time elder care. However, she was now living alone and expecting a child for whom she would be the primary financial provider. It was apparent that Spells's circumstances had changed since the pretrial hearing. Yet, no further evidence of her assets, income, or necessary expenses emerged at sentencing. The court found Spells indigent as to probation fees but imposed a fine, costs, and other fees.

We find it a close question whether the trial court's inquiries were adequate under the standard we set out today. Certainly, the court made some inquiries into Spells's income and circumstances. On the other hand, the court entered its order without knowing for sure the amount of Spells's income or of any necessary expenses like rent or prenatal healthcare. This omission seems especially important given that Spells was living alone and had a child on the way. We note, too, that the cash bail was deposited by a third party, not by Spells herself. This could have been a gift, or it could have been only a loan. We think that the trial court, having found Spells indigent as to representation and probation fees, should have investigated more deeply just what Spells could afford to pay in fines, costs, and other fees. On these facts and under the standard announced in this opinion, we conclude that the trial court did not undertake a sufficient indigency inquiry.

## Conclusion

We hold that execution of a cash-bail agreement under code section 35-33-8-3.2(a)(1) entitles the trial court to retain all or part of the cash bail to cover the cost of a defendant's public defender. Cash bail may not, however, be retained to pay fines or most fees and costs unless an indigency determination is made following a hearing. Under the new statutory standard, the record of an indigency determination must disclose evidence of the defendant's assets, income, and necessary expenses, insofar as they bear on ability to pay. Under this standard, Spells's indigency determination was incomplete.

We affirm the retention of Spells's cash bail to cover her $100 supplemental public-defender fee and $2 jury fee. The $20 fine and $183 in

other costs and fees are vacated. We remand the case to the trial court for proceedings on the fine, costs, and fees consistent with this opinion.[13]

Rush, C.J., and Massa, Slaughter, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANT
Valerie K. Boots
Megan E. Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Kelly A. Loy
Robert M. Yoke
Office of the Attorney General
Indianapolis, Indiana

---

[13] In *Bell*, this Court split over whether it was appropriate to vacate and remand the restitution order alone or the entire sentence. 59 N.E.3d at 966 (majority opinion), 967 (Slaughter, J., concurring in part). Here, it could serve no purpose to vacate Spells's whole sentence along with her fine because she has already completed probation successfully.